**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Lindsay Ozgunay, | ) | Case No. 20-15720 |
| | ) | |
| Debtor(s). | ) | Judge Cox |

**DEBTOR'S RESPONSE TO US TRUSTEE'S
MOTION TO DISMISS CHAPTER 7 CASE**

NOW COMES Debtor, Lindsay Ozgunay, by and through her attorneys, Cutler & Associates, Ltd, and for her Response to the US Trustee's Motion to Dismiss Chapter 7 case, Debtor states and alleges as follows:

**INTRODUCTION**

1. Debtor, a licensed nurse[1], filed her Chapter 7 case on August 17, 2020.

2. The United States Trustee's office filed its motion to dismiss the case on November 23, 2020.

3. Trustee's motion makes assumptions of facts which are not based on the Debtor's schedules or testimony at her Section 341 Meeting and Trustee ignores facts which should weigh heavily on this Court's ability to properly rule on the totality of debtor's circumstances.

4. In In re: Kubatka, 605 BR 339 (Bankr. WD Penn, 2019), the Court listed the following factors that should be considered in assessing the totality of the Debtor's circumstances in determining a bad faith filing on the part of Debtor:

> "Although the totality of the circumstances is inherently incapable of being reduced to an exhaustive list, factors traditionally considered by courts include: (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of their ability to repay; (3) *Whether the*

---

[1] License is personal to Debtor and cannot be sold or transferred.

*debtor's family budget is excessive or unreasonable*; (4) *Whether the debtor's expenses can be reduced significantly without deprivation of adequate food, clothing, shelter, and other necessities*; (5) *Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;* (6) Whether the debtor enjoys a stable source of future income; (7) Whether the debtor has the ability to repay debts out of future earnings; (8) *Whether an attempt to repay debts would be easy, difficult, or wholly unfeasible*; (9) **Whether the debtor is eligible for chapter 13**; (10) *Whether there are state remedies with the potential to ease the financial predicament and the degree of relief obtainable through private negotiations*; and (11) *Whether the petition was filed in good faith.* Moreover, if an ability to pay analysis requires the "diversion" of funds from the monthly payment of student loans, the court must consider whether and to what degree the student loan obligation is likely to increase in principal during the duration of a chapter 13 plan. Id. 605 BR 339, 367-368. *[emphasis added].*

5. Debtor asserts that the totality of the circumstances support her eligibility for Chapter 7. Her household budget is far from excessive or unreasonable; her expenses cannot be reduced without deprivation of adequate food, clothing, shelter, and other necessities; her schedules and statement of current income and expenses reasonably and accurately reflect her true financial condition[2] she cannot afford to pay both her student loans and other unsecured debts; her petition was filed in good faith; and *she is ineligible for a Chapter 13*.

## TRUSTEE ALLEGATIONS

6. The Trustee argues that Debtor's case must be dismissed for the following reasons:

    a. Debtor improperly includes as an expense on Schedule J the repayment of her student loan debt.

    b. Debtor has listed excessive transportation expenses on schedule J.

    c. Debtor has not suffered any calamity that drove her into bankruptcy.

---

[2] Debtor's average income over the past six months has decreased by approximately $200/month. Debtor has produced proof of her child care costs to Trustee significantly higher than her budgeted amounts, and proof of her student loan payments amounts.

    d.  Debtor has the ability to repay 65% of all her unsecured debt in 60 months.

7.  Debtor will address each of these arguments below.

## ARGUMENT

I. <u>Trustee Argues Debtor Improperly Includes as an Expense on Schedule J the Repayment of Her Student Loan Debt.</u>

8.  Trustee argues that student loan payments are not an allowed expense that can be used to show the inability to repay debts. However, the Court in <u>Kubatka</u>, 605 BR 339, disagreed:

> "The case law recognizes the prohibition against a debtor favoring their student loan debts is not absolute. Indeed, courts have recognized that it may be appropriate to not count a debtor's monthly student loan payments as disposable income where: (1) "there existed a large student-loan obligation which, given its nondischargeable character, would continue to increase in principal during the duration of a Chapter 13 plan;" and (2) the distribution to debtor's other unsecured creditors under a hypothetical chapter 13 plan would be minimal. In the Court's view, this is not so much an exception to the rule, but merely an evaluation of the totality of the circumstances and an acknowledgment that a debtor's ability to pay should be material if the case is to be dismissed for abuse." *Kubatka* 605 BR at 366.

9.  None of the cases cited by the Trustee in its motion state a blanket rule that student loan payments are not an allowable expense on Schedule J. Rather, all cited cases address the totality of the circumstances and require a review of a debtor's particular situation.

10.  Debtor owes over $310,000 in student loans. As indicated in her budget, she cannot afford to pay both her student loans and her other creditors. Any amounts paid to other creditors would result in an underpayment of her student loans, resulting in an increase in principal as she would not be making her full required payments. This would cause harm to both Debtor and her co-signers.

11. In considering whether student loan expenses can be used as an allowable Schedule J expense, courts have found relevant the fact that a debtor has a co-signer.

12. As the Court summarized in <u>In re Martin</u>, 371 B.R. 347 (Bankr. C.D. Ill. 2007):

"<u>In Templeton</u>, 365 B.R. 213, the court found that, because it was undisputed that the student loans in question were non-dischargeable, the debtors had no reasonable alternative other than to pay them. The court held "there is nothing within the Debtors' power to reduce or otherwise avoid the additional expense of the student loans." <u>Id</u>. at 216."

"In <u>Haman</u>, 366 B.R. 307, the court also found that, because the student loan obligation of the debtor who had cosigned for her son was non-dischargeable, the debtor had no reasonable alternative to payment of the loan. The debtor had no ability to pay the loan in full and avoid ongoing payments and her son could not make the payments due to a medical condition. Further, the court rejected the arguments of the UST in that case that partial payment through a Chapter 13 case would be a reasonable alternative. Id. at 315-16." *Martin* at 355.

13. Debtor has co-signers on her student loans. Her sister and mother are both co-signers. Requiring Debtor to pay co-signed student loan debt through a hypothetical Chapter 13 is not a reasonable alternative, as it would harm her co-signers by causing them to default on their obligations.

14. As discussed further below, a hypothetical Chapter 13 is *not an option* for Debtor as her debt exceeds the debt limits for a Chapter 13.

15. Therefore, without a reasonable alternative to pay the student loans and because of the negative affect on her co-signers, the Debtor's student loan expenses should be allowed.

II.   <u>Trustee Argues the Debtor has Listed Excessive Transportation Expenses on Schedule J.</u>

16. Debtor lives in Illinois and works in Indiana. Her daily commute to and from work is *110 miles a day* and she is required to pay tolls getting to her job. Debtor accepted a position in Indiana because she needed the income to provide for household. Had a comparable position been available to her in Illinois -- which one was not -- she could have avoided her 2 ½

hour daily commute time and saved money on transportation costs. Rather than wait until a nearby job opportunity arose, Debtor accepted her position.

17. While Trustee alleges Debtor's scheduled transportation expenses are excessive and should be lowered, Trustee does not contest the fact that Debtor *actually pays* these necessary transportation costs.

18. Moreover, Trustee ignores the fact that other than her *necessary* transportation expenses, Debtor is living on a minimal budget so that she can afford to get to work, support her family, and pay her non-dischargeable student loans.

19. The following comparison between Debtor's Schedule J budget and IRS Guideline expenses for a household size of two indicates that Debtor is living "below means" in every category of living expenses other than her transportation costs:

| Item | Debtor's Sch J | IRS Guideline |
|---|---|---|
| Food | $600 | $715 |
| Clothing | $120 | $158 |
| Housekeeping | $-0- | $ 67 |
| Personal Care and Miscellaneous | $200 | $358 |
| Medical | $-0- | $112 |
| Total | $920 | $1,410 |

Even her car payment of $380/month is significantly less than IRS standard of $521.

20. Additionally, prior to filing its motion, Trustee requested and Debtor produced proof of her child care expenses, which, unfortunately for Debtor, identified that she was paying

over $700/month more than she had budgeted for on her Schedule J.[3] Debtor's expenses are clearly not excessive as the Debtor actually pays these expenses and the Trustee does not contest this.

21. Trustee's bald allegation that Debtor's transportation expenses are excessive is misleading and intended to mischaracterize Debtor's lifestyle and suggest that her budget is inflated. Debtor's transportation expenses are necessary and must be allowed as a Schedule J expense. Without them, Debtor would not be able to get to work or would be forced to accept a lower paying job.

III. <u>Trustee Argues the Debtor Has Not Suffered Any Calamity That Drove Her Into Bankruptcy.</u>

22. Trustee asserts that because Debtor has a high income, she is not needy and has not suffered any calamity that drove her into bankruptcy. This claim has no basis in Debtor's schedules or her Section 341 testimony. No questions have been asked of the Debtor as to whether she suffered a calamity prior to the filing of this case.

23. Moreover, the case law cited by Trustee indicates that a calamity is not a requirement to be allowed to file bankruptcy. Rather, a calamity is something that could be counted in Debtor's favor, but the lack of one, does not work against her.

24. Notwithstanding Trustee's assertion, Debtor has been subject to an ongoing contentious custody fight with her son's father, who has admitted substance abuse issues, and which continues to cause stress on the Debtor and her five-year old son. The substance abuse issues led to the breakup of the relationship and a good portion of the debt incurred by Debtor was incurred during her relationship with her ex.

---

[3] Additional day care expenses were necessary due to Covid related school closings which were unanticipated at the time of filing her case.

25. Moreover, Debtor will no longer be receiving child support due to her ex's unemployment.

IV. <u>Trustee Argues Debtor Has The Ability to Repay 65% of All Her Unsecured Debt in 60 Months.</u>

26. Lastly, Trustee claims that Debtor has monthly disposable income available for debt repayment. Trustee argues that Debtor could repay her unsecured debt at approximately 65% over a period of 60 months.

27. The sum and substance of Trustee's claim is that Debtor can make these payments in a Chapter 13 Plan.

28. Trustee ignores the fact that Debtor is not eligible for a Chapter 13 as her unsecured debts exceed the debt limit set forth in 11 U.S.C. §109(e) of $419,275.

29. While Trustee alludes to the possibility of a Chapter 11, this is not a feasible option due to the costs, time requirements, trustee and attorney fees as well as the requirement of consent from impaired class of creditors. Moreover, Chapter 11 does not provide a co-debtor stay which would cause unnecessary harm to Debtor's mother and sister.

30. Accordingly, Trustee's argument based on a hypothetical Chapter 13 filing, does not apply here and Debtor has no viable alternative other than a Chapter 7

## CONCLUSION

31. The arguments set forth by the Trustee simply are not sufficient to dismiss the Debtor's case. The Debtor has no viable alternative to a Chapter 7. She cannot convert to a Chapter 13. Her expenses, including student loan payment, should be allowed.

WHEREFORE, the Debtor, Lindsay Ozgunay, prays for the following relief:

A. That the US Trustee's motion to dismiss be denied; and

    B.    For such other and further relief as this Court deems equitable and just.

Dated: January 7, 2021

                              Respectfully Submitted,

                              By: /s/ David H. Cutler
                              One of Debtor's Attorney

Cutler & Associates, Ltd.
4131 Main St.
Skokie, IL 60076
Phone: (847) 673-8600