UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| LINDSAY Z. OZGUNAY, | ) | CASE NO. 20-15720 |
| | ) | |
| DEBTOR. | ) | HON. JACQUELINE P. COX |

**UNITED STATES TRUSTEE'S REPLY IN SUPPORT OF MOTION TO DISMISS**

NOW COMES PATRICK S. LAYNG, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), by and through his attorney, Spencer C. Ezell, and for his Reply in Support of the U.S. Trustee's Motion to Dismiss states and alleges as follows:

**PRELIMINARY STATEMENT**

The Debtor's Response fails to alter the conclusion that this case is an abuse of the provisions of Chapter 7. Even when adjusting the Debtor's income to subtract child support that allegedly is no longer received, and by leaving the Debtor's monthly transportation expense untouched, the Debtor still has enough disposable income to satisfy roughly 47% of her unsecured debt. For these reasons, along with those stated below and in the U.S. Trustee's Motion, this case should be dismissed.

**INTRODUCTION**

1. On August 17, 2020, Lindsay Z. Ozgunay commenced a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, which case was assigned Case No. 20-15720.

2. The Debtor has primarily consumer debt. The Debtor lists that she owes $421,187 in unsecured non-priority debt, $371,705 of which is student loan debt. *Exhibit A*.

3. The Debtor reports that she earns gross wages of $13,736.67 per month, or $164,840 on an annual basis.[1] *Exhibit A*.

4. In addition, the Debtor was receiving $1,244 per month in child support. *Exhibit A, Schedule I, Line 8c*. On her Schedule I, the Debtor testified under penalty of perjury that she expected this income to remain steady for at least the year after the petition date. *Id., Line 13*. Now, in her Response, the Debtor alleges that she will no longer receive this income due to her ex-spouse's unemployment.

5. According to Schedule J, the Debtor's monthly expenses total $10,664.00. After subtracting expenses from her net income, the Debtor reports only $9.33 in monthly net income.

6. However, the Debtor improperly includes as an expense on Schedule J the repayment of her student loan debt at $4,536 per month. This is not an allowed expense for a Chapter 7 debtor.

7. The Debtor is an anesthetist for NorthStar Anesthesia of Illinois LLC. The U.S. Trustee respects the Debtor's strength and bravery in working with patients suffering from COVID-19. Nonetheless, the totality of her circumstances demonstrates an abuse of Chapter 7 of the Bankruptcy Code. Even if the U.S. Trustee accepts as true the Debtor's transportation costs and change in child support, the Debtor has a net monthly income above $3,000 per month and could make a substantial dividend to *all* of her unsecured creditors in a hypothetical 60-month plan.

---

[1] Notwithstanding the Debtor's substantial income, her Statement of Current Monthly Income yielded a "below median" result because the Debtor had not been earing income during most of the six-month look back period. Attached is a copy of the Debtor's Statement of Current Monthly Income (the "Means Test"). *See Exhibit B*.

8.     Despite removing the $1,244 in child support and $452 for transportation expenses from the U.S. Trustee's calculations in its Motion to Dismiss, the Debtor still yields a net monthly income of $3,301.33 [$9.33 net monthly income - $1,244 child support + $4,536 student loan payment]. When considered in the context of a hypothetical 60-month plan, the Debtor could afford to repay $198,079.80 towards her unsecured creditors—a 47% dividend. Allowing the Debtor to remain in Chapter 7 would be an abuse of the Bankruptcy Code.

## ARGUMENT

### I. THE DEBTOR CANNOT INCLUDE REPAYMENT OF GENERAL UNSECURED DEBT ON SCHEDULE J

9.     The Debtor cannot properly claim the repayment of her student loan debt of $4,536 per month on her Schedule J. Consequently, the $4,536 amount must be included in the Debtor's net monthly income for purposes of determining her ability to repay unsecured creditors.

10.     Student loans are general unsecured claims. *In re Kubatka*, 605 B.R. 339, 365 (Bankr. W.D. Pa. 2019). The Bankruptcy Code and its underlying principles demand that similarly situated claims be provided similar treatment. *Id.* Consequently, numerous courts have held that "a debtor may not provide more preferential treatment to student loan obligations than is afforded general unsecured claims." *Id.* at 365–66 (citing *Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 216 (8th Cir. 1994) and *Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229 (B.A.P. 1st Cir. 2001)). Courts have used this reasoning to hold that "student loans are not necessary expenses and that the funds devoted to their repayment must be considered as part of the debtor's ability to pay" in a § 707(b)(3)(B) analysis. *Id.* at 366; *see also McGowan v. McDermott*, 445 B.R. 821, 826 (N.D. Ohio 2011); *In re Stackhouse*, 582 B.R. 445, 451–52 (Bankr. S.D. Ohio 2018); *In re MacNamara*, 2009 Bankr. LEXIS 1581, *5 (Bankr. M.D. Pa. June 5, 2009); *In re Thompson*, 457 B.R. 872, 883–84 (Bankr. M.D. Fla. 2011).

11. As the Debtor states, *In re Kubatka* does provide a limited exception where (1) "there existed a large student-loan obligation which, given its nondischargeable character, would continue to increase in principal during the duration of a Chapter 13 plan;" and (2) the distribution to debtor's other unsecured creditors under a hypothetical chapter 13 plan would be minimal." 605 B.R. at 366. However, the Debtor's circumstances do not qualify her for this exception. While the Debtor's student loan debt is no doubt large and would continue to increase in principal throughout the five year duration of the plan, the distribution which Debtor could provide to her unsecured creditors would be significant, not minimal. Even with some adjustments to the U.S. Trustee's initial calculations, the Debtor could make a 47% dividend to all unsecured creditors. Such an amount of repayment to all unsecured creditors is far from minimal. *See, e.g.*, *In re Behlke*, 358 F.3d 429, 437 (6th Cir. 2004) (finding substantial abuse where debtors had ability to pay 14% dividend to unsecured creditors).

12. Finally, the Debtor argues that a Chapter 13 plan would harm her mother and sister as well. However, the Debtor mischaracterizes the case law cited in support of her argument. The Debtor cites *In re Martin*, 371 B.R. 347 (Bankr. C.D. Ill. 2007); *In re Templeton*, 365 B.R. 213 (Bankr. W.D. Okla. 2007); and *In re Haman*, 366 B.R. 307 (Bankr. D. Del. 2007) for the proposition that courts allow student loan payments as an expense on Schedule J where the debtor has a co-signer. [Response ¶ 11, 12]. The pivotal issue in the instant case is whether a debtor may properly claim a student loan payment on Schedule J when calculating the debtor's ability to pay under the totality of the circumstances analysis of 11 U.S.C. § 707(b)(3)(B). However, in the above-cited cases, the issue is instead whether a student loan obligation properly qualifies as a "special circumstance" which can rebut the presumption of abuse of 11 U.S.C. § 707(b)(2).

13. These analyses are drastically different. Section 707(b)(2) is a straight-forward, mathematical analysis, while 707(b)(3)(B)'s totality of the circumstances is a case-by-case analysis that looks to any variety of factors related to the circumstances of the debtor's case. As such, precedent demonstrating that student loan payments may be an adjustment as a special circumstance for rebutting the presumption of abuse holds no weight in determining whether student loan payments belong on Schedule J for determining the Debtor's ability to pay.

## II. THE DEBTOR'S TRANSPORTATION EXPENSE IS ACTUAL AND ALLOWED

14. Upon the information contained in the Debtor's Response, and subject to receiving corroborating documentation from the Debtor, the U.S. Trustee would agree that the Debtor's transportation expenses are actual and necessary.

15. Therefore, subject to receipt of corroborating documentation, the U.S. Trustee would forgo his argument that the Debtor's transportation expense should be reduced by $452.[2]

16. Nevertheless, even without any changes to the Debtor's budget whatsoever, the Debtor can still afford to repay approximately 47% of her unsecured claims in a hypothetical Chapter 13 plan.

## III. THE DEBTOR HAS NOT SUFFERED AN ILLNESS OR CALAMITY NECESSITATING THIS BANKRUPTCY CASE

17. The Debtor is correct that a calamity is not a prerequisite to filing for bankruptcy. However, it is widely accepted as one of the relevant factors in a totality of the circumstances

---

[2] Through counsel, the Debtor agreed to informally produce documentation related to her expenses and financial affairs.

5

analysis. *See In re Kubatka*, 605 B.R. 339, 367 (Bankr. W.D. Pa. 2019); *In re Lorenca*, 422 B.R. 665, 669 (Bankr. N.D. Ill. 2010).

18. Further, it is important whether the calamity, at least in part, caused the financial issues for the Debtor. *In re Planck*, 2017 Bankr. LEXIS 2181, *23 (Bankr. C.D. Ill. Aug. 3, 2017) ("Although the Debtor suffers from many health problems, none of them were the immediate cause of his financial problems. But if his health problems had been the cause of the bankruptcy, that factor would weigh in favor of the Debtor in the analysis.").

19. In this case, the Debtor alludes to a custody battle as a factor mitigating against a finding of abuse. Without minimizing the impact of such a dispute, the Debtor does not point to that as a cause of her financial problems, thereby calling into question the relevance of that matter.

20. Therefore, while the absence of a calamity is not determinative of abuse under the totality of the circumstances, it is a relevant factor. The Debtor's custody battle was not a cause of her filing and she did not allege any other pre-petition illness or calamity that created the need for filing.

### IV. THE DEBTOR'S INELIGIBILITY FOR CHAPTER 13 DOES NOT MEAN THAT HER CIRCUMSTANCES ARE NOT AN ABUSE OF CHAPTER 7

21. The Debtor attempts to avoid a finding that this case is abusive by arguing that she is ineligible to be a Chapter 13 debtor and that being a Chapter 11 debtor would be inconvenient and costly. Neither of those factors are relevant to the question before the Court of whether this case is an abuse of the provisions of Chapter 7.

22.     Debtor correctly states that she is ineligible for Chapter 13 because her unsecured debts exceed the debt limit. *See* 11 U.S.C. § 109(e).[3] It is noteworthy that, as of the petition date, the Debtor exceeded the debt limit by only $1,912. As there was no apparent immediate need for the Debtor to file this case when she did, a brief delay of one or two months would have enabled the Debtor to reduce her unsecured debt below the limit, thereby avoiding the predicament she now finds herself in.

23.     Nonetheless, several courts have acknowledged that a debtor's Chapter 7 case may still be dismissed under § 707(b)(3) despite the Debtor's ineligibility to convert to Chapter 13. *See, e.g.*, *In re Crawley*, 412 B.R. 777, 787 (Bankr. E.D. Va. 2009) ("ineligibility for chapter 13 relief is not dispositive of a motion to dismiss for abuse under § 707(b)."); *In re Krohn*, 886 F.2d 123, 127 (6th Cir. 1989); *In re Rooney*, 436 B.R. 454, 460 (Bankr. N.D. Ohio 2010); *In re Wolf*, 390 B.R. 825, 833–34 (Bankr. D.S.C. 2008). Allowing debtors to avoid conversion or dismissal because they exceed the debt limits of § 109(e) would create the impermissible result of benefitting debtors who rack up high consumer debt while simultaneously punishing those debtors who make an honest effort to keep their debt levels in check. *In re Krohn*, 886 F.2d at 127.[4]

24.     Debtor argues that conversion to Chapter 11 is not feasible because of "the costs, time requirements, trustee and attorney fees as well as the requirement of consent from impaired

---

[3] The U.S. Trustee notes that it did acknowledge the Debtor's ineligibility for Chapter 13 in its Motion to Dismiss. *See* Dkt. 13, ¶ 17, n.5.

[4] There is no constitutional right to bankruptcy protection. *In re Krohn*, 886 F.2d 123, 127 (6th Cir. 1989) ("There is no constitutional right to a bankruptcy discharge, and the 'fresh start' provided for by the Code is a creature of congressional policy. Congress, within the limits set by the Constitution, is free to deny access to bankruptcy as it sees fit.") (internal citations omitted); *In re Wolf*, 390 B.R. 825, 834 (Bankr. D.S.C. 2008). There are some unfortunate debtors which fall in between the cracks of the various chapters.

7

class of creditors." [Response, ¶ 29]. Also, Debtor points to the lack of a co-debtor stay in Chapter 11. Neither of the Debtor's arguments are persuasive.

25.     Regarding the feasibility argument, all Chapter 11 debtors must satisfy the essential requirements of Chapter 11's provisions. This Debtor is in no way special or unduly harmed by these requirements. Also, it is not the U.S. Trustee's duty to ensure that Debtors get relief in the most convenient manner—it is to enforce the provisions of the Bankruptcy Code for the benefit of all stakeholders, including all of the Debtor's unsecured creditors.

26.     In terms of the lack of a co-debtor stay in Chapter 11, the Debtor fails to recognize that there is not a co-debtor stay in Chapter 7 either, which is where she hopes to remain. In fact, the only chapter of the Code which provides a co-debtor stay is Chapter 13. *See* 11 U.S.C. § 1301(a). Therefore, this argument lacks merit.

27.     Consequently, if the Debtor insists that conversion to Chapter 11 is not a viable alternative, then the final possible avenue is the dismissal of her case.

## **CONCLUSION**

28.     The Debtor has the ability to repay a significant portion of her unsecured debt, and to date, has not evidenced any attempt to do so. Even after factoring in the loss of child support of $1,244 per month and without adjusting the Debtor's transportation expenses, she still has a net monthly income of $3,301.33. In a hypothetical 60-month plan, the Debtor could afford to make a 47% dividend to all of her unsecured creditors. Moreover, she did not file for relief as a result of suffering an illness or calamity, and her lack of eligibility for Chapter 13 does not affect whether her circumstances constitute an abuse of Chapter 7. Given the totality of the circumstances, allowing the Debtor to remain in Chapter 7 would be an abuse.

29. Based on the above and given the totality of the circumstances, this case should be dismissed pursuant to § 707(b)(3).

**WHEREFORE**, the U.S. Trustee requests the Court to enter an order dismissing the Debtor's case pursuant to Section 707(b)(3)(B) of the Bankruptcy Code and for such other relief as is just.

> RESPECTFULLY SUBMITTED:
> PATRICK S. LAYNG
> UNITED STATES TRUSTEE

Dated: January 20, 2021     By: /s/ Spencer C. Ezell
Spencer C. Ezell, Trial Attorney
OFFICE OF THE U.S. TRUSTEE
219 S. Dearborn Street, Room 873
Chicago, Illinois 60604
(262) 613-8737